

DIRECT DIAL NUMBER:  
(215) 575-7268

Lawrence G. McMichael  
lmcmichael@dilworthlaw.com

November 9, 2020

**VIA CM/ECF**  
The Honorable Sidney H. Stein  
United States District Judge  
Southern District of New York  
United States Courthouse  
500 Pearl St.  
New York, NY 10007-1312

      RE:    **U.S.A. v. Nemazee, Criminal Action No.: 1:09-902 (SHS)**

Dear Judge Stein:

      We represent Hassan Nemazee in the above-referenced matter. On November 4, 2020, the Court denied Mr. Nemazee's request to travel to Costa Rica to continue work there for his employer. We understand and appreciate the reasons articulated by the Court for this denial. Nonetheless, the result of his inability to travel will be a cessation of Mr. Nemazee's income since he will not be able to discharge his duties to his employer. Supervised release is not punitive; it is designed to help a former inmate transition into a productive member of society, which Mr. Nemazee has already done. In this case, supervised release is having the opposite effect. It is interfering with Mr. Nemazee's ability to make a living and make monthly restitution payments. Accordingly, the appropriate remedy is to terminate supervised release.

      The consequences of Mr. Nemazee's inability to travel needs to be understood in the context of his employment agreement. Mr. Nemazee was originally hired by his employer when he returned to New York City for home confinement. His original salary was $2,500 per month because he could not travel while in home confinement and could perform only limited services for his employer. When his status changed to supervised release and he was able to travel domestically and internationally, his compensation was readjusted upward to $15,000 per month and he was assigned to supervise construction projects in the United States, and in Costa Rica. His restitution payments increased commensurately to $2,250 per month. His employer has advised him that if he is unable to travel internationally his compensation will be adjusted downwards to reflect his inability to perform all of his duties.

      At the orientation meeting with Probation, Mr. Nemazee was told that Probation regularly supports early termination after 18 months of a 3 year term of supervised release, if the individual has been in compliance with all aspects of his obligations as Mr. Nemazee has been. Mr. Nemazee now requests early termination after one year, only 6 months earlier than usual.

1500 Market Street • Suite 3500E • Philadelphia, PA 19102-2101 • 215-575-7000 • Fax: 215-575-7200  
www.dilworthlaw.com • Cherry Hill, NJ • Harrisburg, PA • Princeton, NJ • Wilmington, DE • New York, NY

121815248_1

Termination will enable Mr. Nemazee to do his job, earn a living and make regular restitution payments as he has been doing, and it will also relieve probation of an unnecessary burden of supervising him. For the reasons stated below, Mr. Nemazee respectfully requests early termination of his supervised release.

As the Supreme Court has noted, "supervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Accordingly, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). As discussed in greater detail below, Mr. Nemazee has already re-acclimated to society and demonstrated that he needs no further guidance to lead a productive life. Mr. Nemazee requests that in light of his rapid integration back into society and his clear ability to lead a productive and independent life, and the counter-productive consequences of continued supervision, that this Court terminate his supervised release.

On July 14, 2010, this Court sentenced Mr. Nemazee to a 144 month term of imprisonment plus three years of supervised release. The Bureau of Prisons transferred Mr. Nemazee to home confinement on March 13, 2019. Mr. Nemazee quickly obtained a job with Merilane Management and the Araz Group, d/b/a HealthEZ, a health care and real estate company located in Minnesota that has been in business for more than 37 years. As noted in my letter of November 3, 2020, this job was obtained through Mr. Nemazee's personal contacts and friends. He has been continuously employed since his release from confinement and has made monthly payments on is restitution obligation from his income. On June 18, 2019, the United States Probation Office for the Southern District of New York moved Mr. Nemazee to its "Low Intensity Caseload," citing Mr. Nemazee's "positive adjustment and compliance with supervision."[1]

Mr. Nemazee began his term of supervised release on November 15, 2019. Since that time, this Court has entered two separate Orders that allowed Mr. Nemazee to travel outside of the country to conduct international business and one order denying such travel. One trip occurred without incident, and the other was postponed due to COVID-19 restrictions. Additionally, Mr. Nemazee continues to make regular restitution payments and has not violated the terms of his supervised release in any way or had any issues with the US Probation Office. On October 22, 2020, the Probation Office conducted a "snap inspection" of Mr. Nemazee's apartment and found no violations or issues.

"The decision whether to grant early termination rests within the discretion of the district court." *United States v. Harris*, 689 F.Supp.2d 692, 694 (S.D.N.Y. 2010). "The court may . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is [1] warranted by the conduct of the defendant released and [2] the interest of justice." 18 U.S.C. § 3583(e)(1). Additionally, and as explained in the congressional statement of policy that accompanies the Sentencing Reform Act,

---

[1] A true and accurate copy of the letter from the US Probation Office to Mr. Nemazee is attached hereto as **Exhibit A**.

> [T]he primary goal of [Supervised Release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.

S. Rep. No. 98-225, at 124 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3307; *see also United States v. Trotter*, 321 F. Supp. 3d 337, 345–46 (E.D.N.Y. 2018) (discussing at length the rehabilitative as opposed to the punitive nature of Supervised Release). Therefore, early termination of supervised release is appropriate when warranted by the defendant's conduct, when early termination serves the interest of justice, and when the policy goals of supervised release are no longer being met by continued supervision.

Mr. Nemazee's conduct, the interest of justice, and the policy behind supervised release, all strongly support early termination of Mr. Nemazee's supervised release. First, as noted, Mr. Nemazee has held steady, gainful employment since shortly after his release from incarceration. As described in the letter from his employer, "Mr. Nemazee's role has been extraordinarily broad and quite meaningful to Merilane Investment LLP[.]"[2] Notably, Mr. Nemazee has examined potential real estate investment opportunities in Utah, Wyoming, Florida, and the Caribbean. He also helped to negotiate and execute the sale of Merilane's majority interest in HealthEZ, closing on favorable terms despite the numerous obstacles presented by the COVID-19 pandemic. This steady employment has allowed Mr. Nemazee to make regular contributions of 15% of his gross wages toward his restitution payment. His employment and ability to make restitution payments is now threatened by his inability to do his job because of travel restrictions arising solely because of the continuation of supervised release.

Additionally, Mr. Nemazee's rapid reintegration into society has allowed him to continue some of the charitable work with which he so frequently engaged prior to his incarceration. For instance, Mr. Nemazee has resumed his work with The Foundation for the Children of Iran. A letter from Firoozeh Firoozmand documents how Mr. Nemazee has helped to facilitate obtaining visas for terminally ill children in Iran who desperately need medical attention in the United States to survive. This work has become all the more challenging due to travel restrictions between the United States and Iran. Recently, Mr. Nemazee has been working diligently to secure a return trip for a college student in Iran who has already received two life-saving heart surgeries in the United States but has been unable to obtain a visa to return for a third surgery.[3] Additionally, upon hearing a story by his son's longtime girlfriend, Maria Canas, about a friend she has in Venezuela, Jose Gregorio Escalante, who could not afford the proper medicine to regulate his diabetes, Mr. Nemazee immediately began purchasing Mr. Escalante's medication.[4]

---

[2] A true and accurate copy of a letter from Mr. Nemazee's employer supporting the termination of his supervised release is attached hereto as **Exhibit B**.

[3] A true and accurate copy of the letter from Firoozeh Firoozmand is attached hereto as **Exhibit C**.

[4] A True and accurate copies of a letter from Ms. Canas describing Mr. Nemazee's charity and a letter from Mr. Escalante thanking Mr. Nemazee for his donation are attached hereto as **Exhibits**

Mr. Nemazee has been purchasing Mr. Escalante's supplies since January and plans to continue doing so indefinitely, as long as he has income that enables him to do it. Considering Mr. Nemazee's good works with his dedication to his job and his regular restitution payments, clearly the interest of justice favors the early termination of Mr. Nemazee's supervised release.

Finally, the policy behind supervised release, to aid in transitioning former inmates into society, is not necessary in Mr. Nemazee's case. Notably, even at the time of sentencing, this Honorable Court found that specific deterrence was not at issue because, "Mr. Nemazee is not about to commit another crime of this nature."[5] General deterrence is not an issue since supervised release is not punitive. Mr. Nemazee's conduct for the duration of his incarceration, in which he had no rules violations whatsoever, through the present, where he maintains gainful employment that requires him to travel internationally, only reaffirms this Court's initial finding: Mr. Nemazee poses no threat, and he is well equipped to live independently as a productive member of society. Simply put, remaining on supervised release is unnecessary for Mr. Nemazee and in no way furthers the purpose of supervised release. In fact, it is contrary to the purposes of supervised release given that it is preventing him from doing his job.

The Probation Office has limited resources, and its personnel has limited time. Its resources and time are much better spent on inmates who genuinely require supervision. Terminating Mr. Nemazee's supervised release will enable the Probation Office to redirect its resources where they are really needed. Terminating supervised release will enable Mr. Nemazee to do his job internationally, continue to earn an income and make monthly restitution payments.

For the foregoing reasons, Mr. Nemazee respectfully asks this Court for an early termination of his term of supervised release, effective on November 15, 2020. A form of proposed order in attached.

Respectfully,

/s/ *Lawrence G. McMichael*

Lawrence G. McMichael

cc: AUSA Michael Dennis Lockard (via email michael.lockard@usdoj.gov)
Godwin Ogunmefun, United States Probation Officer
(via email godwin_ogunmefun@nysp.uscourts.gov)

---

**D and E.**
[5] A true and accurate copy of the quoted portion of Mr. Nemazee's Sentencing Hearing transcript is attached hereto as **Exhibit F**.

121815248_1