

DIRECT DIAL NUMBER:
(215) 575-7268

Lawrence G. McMichael
lmcmichael@dilworthlaw.com

November 13, 2020

**VIA CM/ECF**
The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

   **RE:** **U.S.A. v. Nemazee, Criminal Action No.: 1:09-902 (SHS)**

Dear Judge Stein:

  We represent Hassan Nemazee in the above-referenced matter. On November 9, 2020, I wrote to the Court to request an early termination of Mr. Nemazee's term of supervised release. This letter supplements that request.

  On November 12, 2020, Mr. Nemazee made a modified request to his Probation Officer for a business trip to Costa Rica in November and December in an effort to conform with guidance from this Court. The November 12 request substantially amended the previous request made by Mr. Nemazee and denied by this Court, reducing the trip by approximately 50% and making certain that the trip did not overlap with any holidays.[1] These accommodations took considerable time and effort on the part of his employer to reschedule meetings that could not take place because of Mr. Nemazee's inability to be in Costa Rica on November 12 and to remain there for the amount of time originally contemplated. To address the concern raised by this Court, Mr. Nemazee's employer compressed the previously scheduled meetings into a much shorter time frame and deferred those meetings not deemed essential. Within three hours of the modified request being made, Mr. Nemazee's Probation Officer summarily denied the business travel request and scheduled Mr. Nemazee for an in-person visit at the probation office on November 17, 2020.[2]

  In light of this denial, we write again (i) to emphasize the need for termination of Mr. Nemazee's supervised release on November 15, 2020, and (ii) to request that this Court grant Mr. Nemazee's business travel request to Costa Rica from November 18, 2020 to December 19,

---

[1] The trip does overlap with Thanksgiving, but that holiday is not celebrated in Costa Rica.
[2] A true and accurate copy of the email exchange between Mr. Nemazee and his Probation Officer is attached hereto as **Exhibit A**..

1500 Market Street • Suite 3500E • Philadelphia, PA 19102-2101 • 215-575-7000 • Fax: 215-575-7200
www.dilworthlaw.com • Cherry Hill, NJ • Harrisburg, PA • Princeton, NJ • Wilmington, DE • New York, NY

121996497_1

2020. As noted in our previous filing, the Supreme Court has held that supervised release is not punitive but instead exists to serve a rehabilitative purpose. *See United States v. Granderson*, 511 U.S. 39, 50 (1994) ("supervised release, in contrast to probation, is not a punishment in lieu of incarceration."); *United States v. Johnson*, 529 U.S. 53, 59 (2000) ("supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). Mr. Nemazee is 70 years old. He has never had any issue or violation while incarcerated or after his release from confinement.

Since his release, Mr. Nemazee has had gainful employment that requires him to travel. His employer is in the real estate development business both domestically and internationally. He has travelled several times on approved business trips without incident. Mr. Nemazee's salary is based on his ability to travel to development sites. This income enables him to make monthly restitution payments which he has done without interruption. If Mr. Nemazee cannot travel, he cannot do his job and his income and employment is directly jeopardized. Therefore, maintaining Mr. Nemazee's term of supervised release actually hinders Mr. Nemazee's integration into society and places unnecessary obstacles in his way to re-establishing his life. To compound this matter further, supervised release requires Mr. Nemazee to have physical contact with the Probation Office during the middle of a global pandemic, presenting unnecessary risks for everyone involved.[3]

Mr. Nemazee's case closely parallels the facts of *United States v. Harris*, where a fellow judge of this Court terminated the defendant's term of supervised release because his post-incarceration employment required frequent travel and the terms of his supervised release presented an unnecessary burden to the defendant's integration into society. 689 F. Supp. 2d 692 (S.D.N.Y. 2010). Like Mr. Nemazee, Mr. Harris's victims were banks, and he had approximately a $200 million outstanding balance on his restitution judgment upon release. *Id.* at 693. Nevertheless, Harris was able to land a job in the petroleum industry that required "frequent travel to meet with clients within and outside the United States" in order to "work with clients and trading partners" and "to find new business in which we might invest." However, the Court found that "being on supervised release not only creates multi-faceted obstacles to his advancing in his company and the petroleum industry, which seemingly against the odds he has rejoined, but also places his employment at hazard in the present economic downturn." *Id.* at 695.

In deciding to terminate Mr. Harris's supervised release, the Court reasoned

> There are two possible resolutions to this case. The Court can terminate Harris's supervised release, do away with crippling obstacles to his professional advancement, and make straight his path to rehabilitation and redemption. Or the Court can require Harris to serve his full term of supervised release, leave him

---

[3] A true and accurate copy of my email to Mr. Nemazee's Probation Officer suggesting that a meeting be held virtually due to Mr. Nemazee's age has been attached as **Exhibit B**. Probation has agreed to this request and the meeting is scheduled virtually for Monday, November 16 at 4 PM.

> blocked and at risk in his employment, and confer no benefit of any significance upon the victimized banks. Which resolution is "in the interest of justice?" The question is not close. Justice requires the termination of Harris's supervised release.

*Id.* at 696. Notably, and unlike Mr. Nemazee, Mr. Harris never had his travel requests denied by Probation but instead the delays in waiting for a response from Probation combined with the stigma of conducting business while on supervised release was enough to support the Court's holding. *Id.* at 693 ("While the Probation Department has not restricted Harris's travel, he must obtain Probation's permission before leaving the jurisdiction.").

      Mr. Nemazee has integrated into society and, until now, was doing very well. He continues to maintain close relationships with his family and friends. He has done everything right from the time he appeared before this Court at sentencing until now. It simply does not "serve the interest of justice" to inhibit Mr. Nemazee's growth on the basis of a program that is not punitive in nature but instead is supposed to rehabilitate. We respectfully ask this Court to terminate Mr. Nemazee's term of supervised release on November 15, 2020, and permit this trip in the interim.

      Respectfully,

      /s/ *Lawrence G. McMichael*

      Lawrence G. McMichael

cc: AUSA Michael Dennis Lockard (via email michael.lockard@usdoj.gov)
    Godwin Ogunmefun, United States Probation Officer
    (via email godwin_ogunmefun@nysp.uscourts.gov)